**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq.
One Gateway Center, Suite 2600
Newark, NJ  07102
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALEXANDER BERNIZ, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HOME POINT CAPITAL INC., WILLIAM A. NEWMAN, MARK E. ELBAUM, AGHA S. KHAN, STEPHEN A. LEVEY, AND ERIC L. ROSENZWEIG,<br><br>Defendants. | Case No:<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff Alexander Berniz ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by

1

and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Home Point Capital Inc. ("Home Point" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of all persons and entities other than Defendants that purchased or otherwise acquired Home Point common stock pursuant and/or traceable to the Company's January 29, 2021, initial public offering (the "IPO" or "Offering"), seeking to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act") (the "Class"). The claims in this action arise from Home Point's materially misleading Offering Documents (defined below) issued in connection with the IPO.

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v).

4. Venue is proper in this Judicial District pursuant to Section 28 U.S.C. § 1391(b) as the alleged misleading public filings and press releases entered this district.

5. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying Certification, incorporated by reference herein, acquired Home Point common stock at artificially inflated prices pursuant and/or traceable to the Offering Documents for the Company's IPO and were damaged thereby.

7. Defendant Home Point is a Delaware corporation with principal executive offices located at 2211 Old Earhart Road, Suite 250, Ann Arbor, Michigan 48105. The Company's securities trade in an efficient market on the Nasdaq Global Select market ("NASDAQ") under the ticker symbol "HMPT."

8.  Defendant William A. Newman ("Newman") was at the time of the IPO Home Point's President, Chief Executive Officer, and a Director of the Company.

9.  Defendant Mark E. Elbaum ("Elbaum") was at the time of the IPO Home Point's Chief Financial Officer.

10. Defendants Agha S. Khan ("Khan"), Stephen A. Levey ("Levey"), and Eric L. Rosenzweig ("Rosenzweig") were Directors at the time of the IPO.

11. Defendants Newman, Elbaum, Khan, Levey, and Rosenzweig are sometimes referred to herein collectively as the "Individual Defendants."

12. As directors, executive officers and/or major shareholders of the Company, the Individual Defendants participated in the solicitation and sale of Home Point stock in the IPO for their own benefit and the benefit of Home Point. The Individual Defendants were key members of the IPO working group and executives of Home Point who pitched investors to purchase the shares sold in the IPO, including in IPO road shows.

## SUBSTANTIVE ALLEGATIONS
### Background

13. Home Point, together with its subsidiaries, operates as a residential mortgage originator and service provider. The Company operates through two segments, Origination and Servicing. The Origination segment sources loans through direct, wholesale, and correspondent channels. The Servicing segment offers collecting

loan payments; remitting principal and interest payments to investors; managing escrow funds for the payment of mortgage-related expenses, such as taxes and insurance; and performing loss mitigation activities on behalf of investors and administering mortgage loans.

14. From 2018 to 2020, Home Point undertook an aggressive expansion of its Broker Partner network, increasing the network from 1,623 as of December 31, 2018 to nearly 5,000 as of September 30, 2020, which represents an annualized growth rate of 88%.

15. In the fourth quarter of 2020, mortgage lenders industry-wide began predicting decreased gain-on-sale margins, the difference between the retail and wholesale cost of a mortgage, for the succeeding three months. According to the Fannie Mae Q4 2020 Mortgage Lender Sentiment Survey, only 19% of lenders foresaw a spike in profit margins compared to 48% in the prior quarter, 33% believed profits would hold steady, while 48% expected a decrease in profits.

16. On January 8, 2021, Home Point filed a registration statement on Form S-1 with the SEC in connection with the IPO, which, after amendment, was declared effective on January 28, 2021.

17. On January 29, 2021, Home Point conducted the IPO, issuing 7.25 million shares of the Company's common stock to the public at the Offering price of $13.00 per share for proceeds of $88,123,750 to the selling stockholders before expenses

and after applicable underwriting discounts and commissions.

18. On February 1, 2021, Home Point filed a prospectus on Form 424B4 with the SEC in connection with the IPO, which incorporated and formed part of the Registration Statement.

## Materially False and Misleading Statements

19. The Offering Documents touted the Company's customer relationships and growth strategy, stating, in relevant part:

> While we initiate our customer relationships at the time the mortgage is originated, we maintain ongoing connectivity with our more than 300,000 customers through our servicing platform, with the ultimate objective of securing them as a Customer for Life. Our retention strategy and partnership model has differentiated us from our competitors and is a key driver of our continued growth in the wholesale channel.
>
> Our growth is bolstered by a rising tide from the overall wholesale channel, which has garnered an increased share of the overall U.S. residential mortgage market every year since 2016. We benefit from these trends, as well as from our distinct wholesale strategy, which together enable highly scalable production volumes, a strong mix of purchase transactions and favorable unit economics, driven by lower fixed costs.
>
> Our Wholesale strategy further propels our growth, with total loan originations of $46.3 billion through our Broker Partner network in the twelve months ended September 30, 2020. This represents an annualized growth rate of 133% since 2018. Our total loan originations for the nine months ended September 30, 2020 were $38.0 billion.
>
> Our at-scale, in-house servicing approach is a key differentiator to our Wholesale strategy. We also operate in the Correspondent channel, to source customers efficiently, and in the Direct channel, to provide

lending to customers which we service.

20. The Offering Documents also touted the Company's broker partner network, stating, in relevant part:

> We have grown our Broker Partner network from 1,623 as of December 31, 2018 to nearly 5,000 as of September 30, 2020, which represents an annualized growth rate of 88%. As of September 30, 2020, we held a 6.4% market share in the wholesale channel according to Inside Mortgage Finance, which represents an approximately 4x increase from our market share of 1.6% in 2017. We expect to continue to grow our presence in the wholesale channel by expanding our Broker Partner network, as well as increasing the wallet share we have with our partners.
>
> The rate of growth in our Wholesale channel also demonstrates its scalability. We believe that our extensive network of in-market Broker Partners, a durable yet flexible operating infrastructure and a highly leverageable cost structure allow us to quickly flex origination capacity through different origination environments, while maximizing profitability.
>
> \*   \*   \*
>
> We are the third largest wholesale lender according to Inside Mortgage Finance as of September 30, 2020. Our Broker Partner relationships have grown from 1,623 in 2018 to nearly 5,000 as of September 30, 2020. We expect this growth trend to continue going forward, as our Broker Partners constitute only 20% of the addressable market as of September 30, 2020. Our scale, best-in-class in-market sales force and operational efficiencies are sustainable competitive advantages for our business. We believe our competitive advantages, coupled with the significant opportunity to add new relationships, positions us as the most likely consolidator of market share from smaller competitors.

21. Further, the Offering Documents touted the Company's "[g]rowing and [h]ighly [s]callable [o]perating [m]arket," stating, in relevant part:

7

> We were built to take advantage of the massive opportunity in the mortgage market over time through a dedication to a highly scalable low-cost structure, including in areas such as compliance, fraud prevention procedures and personnel training and retention, which is capable of handling substantial increases in loan origination volume with minimal increases in expenses. We believe that our advantages will help us face substantial competition in this market.
>
> We expect that our commitment to efficient operations, a scalable origination platform supporting partner networks, and strategically utilized servicing capabilities will allow us to compete successfully across market cycles. This has translated to our ability to achieve robust growth. Since 2018, our funded volume has grown from $10.6 billion to $46.3 billion in twelve months ended September 30, 2020, representing a compounded annualized growth rate of 133%. Our funded volume for the nine months ended September 30, 2020 was $38.0 billion. Our profitability and capital efficiency has translated into net income for the nine months ended September 30, 2020 of $422.6 million and Adjusted Net Income for the nine months ended September 30, 2020 of $494.6 million.

22. The statements referenced in ¶¶ 19-21 were materially false and misleading because the Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and was not prepared in accordance with the rules and regulations governing its preparation. Specifically, the Offering Documents made false and/or misleading statements and/or failed to disclose that: (1) Home Point's aggressive expansion of its broker partners would dramatically increase the Company's expenses; (2) the mortgage industry was anticipating industry-wide decreased gain-on-sale margins as a result of rising interest rates in 2021 and Home Point would be subject to the same competitive pressures; (3)

8

accordingly, the Company had overstated its business and financial prospects; and (4) as a result, the Offering Documents were materially false and/or misleading and failed to state information required to be stated therein.

23. Additionally, Defendants violated their affirmative obligations to provide certain material information in SEC filings as required by applicable SEC rules and regulations. Specifically, Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303 ("Item 303"), required Defendants to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a materially favorable or unfavorable impact on net sales or revenues or income from continuing operations." In addition, Item 105 of SEC Regulation S-K, 17 C.F.R. § 229.105 ("Item 105"), required, in the "Risk Factors" section of the IPO Registration Statement, a "discussion of the material factors that make an investment in the registrant or offering speculative or risky" and that each risk factor "adequately describe[] the risk," including by concisely explaining "how each risk affects the registrant or the securities being offered." Defendants' failure to disclose the information in ¶¶ 19-21 violated Item 303 and Item 105, because these adverse facts, trends, and uncertainties were known to Defendants and involved some of the most significant factors impacting the risk profile of Home Point securities and were likely to, and did, have a material adverse impact on Home Point's sales, revenues, and income from continuing operations.

## THE TRUTH BEGINS TO EMERGE

24. On May 6, 2021, Home Point issued a press release announcing the Company's financial results for the first quarter of 2021. Among other results, Home Point reported revenue of $324.2 million, missing consensus estimates by $41.72 million. Specifically, the press release stated, in relevant part:

> Total revenue, net of $422 million, a 525% increase from the prior year quarter, and a 7% decrease from the fourth quarter of 2020. Revenue for the first quarter of 2021 includes a $102 million net mark-to-market gain in the fair value of the Company's mortgage servicing rights (MSR) portfolio, as a result of the significant increase in interest rates during the quarter.

25. That same day, Home Point hosted an earnings call with investors and analysts to discuss the Company's Q1 2021 results (the "Q1 2021 Earnings Call"). During the scripted portion of the Q1 2021 Earnings Call, Defendant Elbaum stated, in relevant part, "in comparison to the fourth quarter of 2020, total revenue in the first quarter of 2021 declined by 7%, primarily due to a lower gain on sale margin, which was partially offset by higher origination volumes and the fair market value increase in the MSR asset." Further, Defendant Elbaum indicated that the Company's "total expenses of $227 million for the first quarter of 2021 are up from $84 million in the year-ago quarter, which reflects the capacity we added to accommodate the tremendous growth we've generated over the last year."

26. On this news, Home Point's stock price fell $1.66 per share, or 17.7%, to close at $7.72 per share on May 6, 2021.

27. At the time this Complaint was filed, Home Point's stock price has continued to trade below the $13.00 per share Offering price, damaging investors.

28. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Home Point's securities, Plaintiffs and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

29. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Home Point securities in its IPO or purchased securities thereafter in the stock market pursuant and/or traceable to the Company's Registration Statement issued in connection with the IPO and were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families, legal representatives, heirs, successors or assigns and any entity in which the officers and directors of the Company have or had a controlling interest.

30. The members of the Class are so numerous that joinder of all members is impracticable. There were over 7.25 million shares sold in the IPO. Since the IPO, the Company's securities have actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not

thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Home Point or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

31. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

32. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

33. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Class that would establish incompatible standards of conduct for the party opposing the Class.

34. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    (a) Whether the Securities Act was violated by Defendants as alleged herein;

(b) Whether the Offering Documents were negligently prepared and contained materially misleading statements and/or omitted material information required to be stated therein; and

(c) the extent to which members of the Class have sustained damages and the proper measure of damages.

35. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

### FIRST CAUSE OF ACTION
### Violation of Section 11 of The Securities Act
### Against All Defendants

36. Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

37. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against Defendants.

38. The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary

to make the statements made not misleading, and omitted to state material facts required to be stated therein.

39. Home Point is the registrant for the IPO. Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

40. As issuer of the shares, Home Point is strictly liable to Plaintiff and the Class for the misstatements and omissions.

41. None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

42. By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

43. Plaintiff acquired shares of Home Point's securities pursuant and/or traceable to the Registration Statement for the IPO.

44. Plaintiff and the Class have sustained damages. The value of Home Point securities has declined substantially subsequent to and due to Defendants' violations.

### SECOND CAUSE OF ACTION
### Violation of Section 15 of the Securities Act
### Against Individual Defendants

45. Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional

misconduct.

46. This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

47. The Individual Defendants were each control persons of Home Point by virtue of their positions as directors, senior officers, major shareholders and/or authorized representatives of Home Point. Individual Defendants had the power and influence and exercised the same to cause Home Point to engage in the acts described herein. The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of Home Point.

48. Home Point and the Individual Defendants were culpable participants in the violations of §11 of the Securities Act as alleged above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

49. This claim is brought within one year after discovery of the untrue statements and/or omissions in the Offering that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Offering. It is therefore timely.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a) declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b) awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c) awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: August 20, 2021              Respectfully submitted,

                                    **THE ROSEN LAW FIRM, P.A.**

                                    By: /s/ Laurence M. Rosen
                                    Laurence M. Rosen, Esq.
                                    One Gateway Center, Suite 2600
                                    Newark, NJ  07102
                                    Tel: (973) 313-1887
                                    Fax: (973) 833-0399

        Email: lrosen@rosenlegal.com

    *Counsel for Plaintiff*